# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **NANCY LLOYD** | : |
| | : |
| **Plaintiff,** | : **CIVIL ACTION FILE NO.:** |
| | : |
| **v.** | : _____ |
| | : |
| **THE PRUDENTIAL INSURANCE** | : |
| **COMPANY OF AMERICA** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

## COMPLAINT

The Plaintiff, Nancy Lloyd, by and through her undersigned attorney, files this complaint against the Defendant, The Prudential Insurance Company of America ("Prudential").

## JURISDICTION AND PARTIES

1.

This is an action that includes claims governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001, *et seq.* The Plaintiff is seeking

to recover disability insurance benefits under the terms of an employee welfare benefit plan and to clarify and enforce her rights under that plan pursuant to 29 U.S.C. §1132(a).

2.

The plan in question is an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

3.

This Court has original subject matter jurisdiction over these claims pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

4.

The Plaintiff is an individual who has resided in this federal district since the time she made her claim for benefits under the welfare benefit plan and at the time she alleges Prudential breached the terms of that plan by terminating her benefit payments.

5.

Prudential is a corporation registered with the Georgia Secretary of State's office to conduct business within this state.  This Court has personal jurisdiction over Prudential in this action pursuant to 29 U.S.C. §1132(e)(2), and venue for this action is proper in this Court.

6.

Prudential may be served with process through its registered agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, GA 30046.

## FACTS COMMON TO ALL CLAIMS

7.

The Plaintiff is seeking to recover long-term disability ("LTD") benefits under an employee welfare benefit plan ("the LTD Plan") established by the Plaintiff's former employer, Global Payments, Inc.

8.

The Plaintiff was an employee of Global Payments, Inc. and was a "participant" covered under the LTD Plan in accordance with 29 U.S.C. § 1002(7) at the time her claims under the LTD Plan arose.

9.

The LTD Plan is funded by a policy of insurance (the "Policy" or "LTD Policy") issued by Prudential.

10.

The Policy sets forth terms of the LTD Plan at issue.

11.

Prudential drafted the terms of the Policy.

12.

At all times relevant hereto, Prudential acted as the *de facto* claim administrator for the LTD Plan and assumed responsibility for making decisions regarding the Plaintiff's claim for benefits under the LTD Plan and Policy.

13.

In its dual role as insurer of benefits and evaluator of claims, Prudential operated under a structural and financial conflict of interest.

14.

The Policy provides for payment of LTD benefits to plan participants who become "Disabled" which is defined under the Policy as follows:

> You are disabled when Prudential determines that:
>
> - you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
> - you are under the **regular care** of a **doctor**; and
> - you have a 20% or more loss in your **monthly earnings** due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience; and
- you are under the regular care of a doctor.…

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

- your doctors; and
- doctors, other medical practitioners or vocational experts of our choice.…

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.…

15.

There is a 180-day Elimination Period during which a participant must meet the Policy's definition of "Disabled" before LTD benefits become payable.

16.

The Plaintiff was employed by Global Payments, Inc. as a paralegal and stopped working on or about July 18, 2017.

17.

The Plaintiff stopped working due to symptoms and impairments caused by a combination of illnesses including but not limited to lumbar facet joint disease, lumbar spine radiculopathy, Myalgic Encephalomyelitis/Chronic Fatigue Syndrome ("CFS"), Chronic Inflammatory Response Syndrome ("CIRS") related to past mold exposure, Lyme disease, ulnar neuropathy of the left elbow to fingers, bilateral hand tremors, fibromyalgia, and brain atrophy.  Each of these illnesses fall within the LTD Policy's definition of "Sickness."

18.

The Plaintiff's symptoms include but are not limited to debilitating chronic pain, fatigue and post-exertional malaise, sensory impairment affecting hand/finger coordination/dexterity, balance problems and cognitive dysfunction.

19.

The Plaintiff has not worked in any capacity since on or before July 18, 2017.

20.

The symptoms and impairments from her illnesses have rendered the Plaintiff unable to perform any gainful occupations with reasonable continuity

since she stopped working and will continue to render her incapable of performing such occupations in the future.

21.

The Plaintiff has been under the regular care of physicians for her illnesses since she stopped working.

22.

The Plaintiff has continuously met the Policy's definition of "Disabled" since she initially stopped working and will continue to meet the Policy's definition of Disabled into the future.

## **CLAIM HISTORY**

23.

After she stopped working, the Plaintiff made a claim for LTD benefits under the Policy.

24.

In December 2019, Prudential approved the Plaintiff's claim under the Policy and approved LTD benefits beginning January 14, 2018, which was the end of the Policy's benefit Elimination Period.

25.

The Plaintiff also made a claim for Social Security disability benefits.

26.

The Policy allows Prudential to reduce the amount of LTD benefits it pays the Plaintiff by the amount of Social Security disability benefits she receives and also allows Prudential to recover an overpayment from the Plaintiff for any retroactive award of Social Security disability benefits the Plaintiff receives that corresponds to a period for which the Plaintiff received LTD benefits from Prudential.

27.

Prudential encouraged the Plaintiff to pursue Social Security disability benefits.

28.

The Social Security Administration determined the Plaintiff was disabled and awarded her benefits.

29.

Prudential received a financial benefit based on the Social Security Administration's determination that the Plaintiff is disabled, including repayment of a lump sum exceeding $60,000 based on accrued benefit the Plaintiff received from the Social Security Administration.

30.

Within a few months of receiving that repayment of benefits, Prudential terminated the Plaintiff's benefits under the Policy effective November 18, 2020 based on its contention that she was no longer Disabled under the Policy. Prudential notified the Plaintiff of its decision to terminate her benefits by letter of the same date.

31.

Prudential has refused to pay the Plaintiff any benefits under the Policy since November 18, 2020.

32.

At the time Prudential terminated the Plaintiff's LTD benefits, the medical evidence it had for review included, among many other things, the reported findings of cardiopulmonary exercise testing ("CPET") on April 16, 2018, and a related case analysis dated May 7, 2018 from Betsy Keller, Ph.D., a fellow of the American College of Sports Medicine.  Dr. Keller interpreted those CPET results and concluded Ms. Lloyd's "response to this two-day cardiopulmonary exercise test indicates that Ms. Lloyd would not tolerate any sedentary work, full or part-time, on an on-going basis" and also reported that "Cognitive dysfunction associated with her fatigue would also be exacerbated and contribute further to her

inability to perform even sedentary level work."

33.

Prudential obtained its own review of the Plaintiff's CPET report and other records from an outside consultant who was a professor in the field of exercise physiology, James Skinner, Ph.D.  Dr. Skinner concluded that the Plaintiff had "severely impaired" functional capacity and, based on his physiological evaluation of the results of the CPET test results, "there are indications that she is not capable of performing the duties associated with office work" and "would have problems doing a full-time job (8 hours a day, 5 days a week) because her functional capacity is so low."

34.

At the time Prudential terminated the Plaintiff's LTD benefits, it also had for review the report of a quantitative analysis of brain imaging known as a "Neuroquant" study that was performed by the Shepherd Center in Atlanta, Georgia and revealed the Plaintiff had developed significant atrophy of her brain.

35.

Prudential also had for review the report of a neuropsychological evaluation that included validated cognitive testing showing the Plaintiff's scores fell into the mildly impaired range in several cognitive domains, including visual memory,

divided attention, and semantic verbal fluency.  The psychologist performing the neurocognitive testing noted in his report that patients with medical conditions known to cause fatigue and pain often exhibit cognitive difficulties.

36.

Prudential had also obtained video surveillance from a private investigator who observed the Plaintiff over the course of four days in November 2019 but did not note any activity that would be inconsistent with that of a disabled individual with severe impairments.

37.

Prudential also had for review the report of an April 18, 2019 functional capacity evaluation ("FCE") that included multiple validity screens to ensure the results of the testing were valid.  That report concluded the Plaintiff was physically unable to perform any level of competitive work activity.

38.

Before it terminated the Plaintiff's benefits, Prudential arranged for Ms. Lloyd to be examined by a neurosurgeon that was either selected by Prudential or by its regularly used vendor, Exam Coordinators Network, Shane Mangrum, M.D.  Dr. Mangrum evaluated the Plaintiff on October 26, 2020.

39.

An audio recording of that evaluation shows that the physical examination portion of this evaluation lasted only 3 minutes.  Dr. Mangrum's report noted that the Plaintiff had an antalgic gait and diffuse muscle tenderness on examination but grossly normal muscle strength.

40.

Dr. Mangrum reported that the Plaintiff reported "diffuse pain symptoms" on examination he believed were "suggestive of fibromyalgia" and that he found "no clear evidence of symptom magnification" during his examination.

41.

Dr. Mangrum opined that the Plaintiff "may have issues with tolerance of activity" due to the pain.

42.

However, Dr. Mangrum declined to render an assessment as to the degree to which the Plaintiff's activity intolerance due to pain would impact her ability to perform work activity.

43.

Dr. Mangrum, instead distinguished "tolerance" for activity from the physical inability to perform that activity regardless of the level of pain and discomfort that

activity causes.

44.

Dr. Mangrum also offered no assessment as to the impact of Plaintiff's chronic fatigue and post-exertional malaise on her ability to sustain work activity over the course of an 8-hour workday.

45.

Nevertheless, Prudential cited to Dr. Mangrum's report as a reason to terminate the Plaintiff's benefits under the Policy.

46.

The Plaintiff pursued an appeal of that decision to Prudential as provided for under the LTD Plan and ERISA regulations, and submitted additional records to Prudential on appeal that included the radiology report of a July 9, 2021 lumbar MRI, the report of a second functional capacity evaluation ("FCE") on July 22, 2021, and functional assessments from two treating physicians.

47.

The Plaintiff's lumbar MRI documented lumbar facet arthropathy at the L5-S1 and L4-5 levels of her spine, which according to the radiologist, had worsened when compared to a previous MRI performed in 2017.

48.

Lumbar facet arthropathy is a condition that is known to cause chronic lower back pain in patients that is exacerbated by lumbar extension and rotation and with prolonged sitting resulting in pain radiating into the buttocks. When examined, patients with this condition typically exhibit tenderness to palpation over the lumbar paravertebral region, however, neurological findings such as lower limb sensation, motor strength, and deep tendon reflexes are typically normal on physical examination of patients with lumbar facet pain. See https://www.ncbi.nlm.nih.gov/books/NBK538228/

49.

The physical examination findings by Prudential's neurosurgical consultant, Dr. Mangrum, were in fact consistent with the Plaintiff's MRI findings of significant lumbar facet arthropathy.

50.

The Plaintiff's July 22, 2021 FCE included multiple validity screens to verify that the Plaintiff put forth good effort and the results of the testing were valid. According to the FCE report, the testing showed that the Plaintiff could only tolerate a maximum of one hour of seated work per day, did not meet the physical capacity threshold for sedentary work, and was not capable of working an 8-hour

workday.

51.

The Plaintiff also submitted assessments from the Plaintiff's treating orthopedic specialist, Keith Osborn, M.D., and primary physician, Forrest Smith, M.D., who agreed with the above-stated FCE findings.

52.

Dr. Osborn also opined that the Plaintiff would require unscheduled breaks to lie down during the day to relieve her physical symptoms.

53.

Dr. Smith opined that the Plaintiff would require 6-8 unproductive breaks or naps of 15 minutes or more each during an 8-hour workday to relieve her chronic fatigue.

54.

During its appeal review, Prudential obtained a medical record review from a doctor of osteopathic medicine, Kevin Kohan, D.O.  That record review was arranged through a company Prudential regularly uses to arrange such reviews, Reliable Review Services.

55.

In his report, Dr. Kohan acknowledged that the Plaintiff's "MRI does demonstrate moderate spinal stenosis L4 – L5 and severe degenerative facet disease L2 through S1".   Dr. Kohan also acknowledged that the Plaintiff's electromyography study revealed demonstrated "subacute left-sided lumbosacral radiculopathy at L5."

56.

Although Dr. Kohan acknowledged that the Plaintiff's MRI findings and complaints of substantial pain would cause functional restrictions and limitations, he disagreed with her validated FCE findings.

57.

Dr. Kohan never examined the Plaintiff and was unable to personally assess the impact of her lumbar pain on her tolerance for work activity.

58.

Dr. Kohan focused solely on the Plaintiff's back condition and examination findings on muscle strength testing.

59.

Dr. Kohan did not assess the extent to which the Plaintiff's chronic fatigue and post-exertional fatigue as demonstrated by her CPET would impair her capacity to sustain competitive work activity.

60.

Dr. Kohan's report was the product of a selective review of the medical records.

61.

Dr. Kohan was not qualified by medical training or experience to render an opinion regarding the extent to which the Plaintiff's chronic fatigue and post-exertional fatigue as demonstrated by her CPET would impair her capacity to sustain competitive work activity.

62.

Prudential denied the Plaintiff's appeal by letter dated June 9, 2022.

63.

The Plaintiff has exhausted her administrative remedies and is entitled to bring this action under 29 U.S.C. § 1132(a)(1)(B).

## COUNT ONE

## CLAIM AGAINST PRUDENTIAL FOR BENEFITS

## UNDER LTD PLAN / POLICY

### 64.

The Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if set forth verbatim herein.

### 65.

The evidence that the Plaintiff submitted to Prudential during the claim and appeal demonstrates that she has met the Policy's definition of "Disabled" on a continuous basis since on or before the date she stopped working and has satisfied all conditions set forth in the Policy for receiving benefits.

### 66.

Prudential's decision to terminate the Plaintiff's benefits under the Policy was wrong, unreasonable, arbitrary and capricious.

### 67.

Prudential failed to establish or implement reasonable procedures to ensure the impartiality of the persons involved in the decision to terminate the Plaintiff's benefits.

68.

The decision to terminate the Plaintiff's benefits under the Policy was influenced by Prudential's conflict of interest.

69.

Prudential's decision to terminate the Plaintiff's benefits under the Policy was based on a selective review of the Plaintiff's medical records and evidence.

70.

The medical opinions obtained by Prudential in connection with the appeal process in this claim were the product of a selective review of the medical records and evidence and the product of bias.

71.

Prudential denied the Plaintiff a full and fair review of its adverse claim decision.

72.

Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), the Plaintiff is entitled to recover benefits under the LTD Plan/ Policy for the period beginning November 18, 2020 and continuing through the date of judgment and will be entitled to continue receiving such benefits into the future.

73.

The Plaintiff is entitled to recover interest accruing on the aforesaid benefits.

## COUNT TWO

## AWARD OF ATTORNEYS' FEES AGAINST PRUDENTIAL

74.

The Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs of this complaint as if set forth verbatim herein.

75.

The Plaintiff has retained counsel to represent her in this matter and is entitled to an award of costs, including reasonable attorneys' fees against Prudential pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

WHEREFORE, the Plaintiff, Nancy Lloyd, prays for relief as follows:

(a)    That the Plaintiff be awarded benefits under the LTD Plan/Policy;

(b)    That the Plaintiff be awarded prejudgment interest accruing on all principal sums to which she is entitled under the Policy;

(c)     That the Plaintiff be awarded her attorneys' fees and costs of

this action;

(d)     The Court clarify the Plaintiff's right to continue receiving

benefits under the LTD Plan/Policy; and

(e)     That the Plaintiff be awarded such additional and further relief

as the Court deems just and proper.

Respectfully submitted this 28th day of June, 2022.

EVANS WARNCKE ROBINSON, LLC

By:     /s/ Douglas M. Robinson
        Douglas M. Robinson
        Georgia Bar No. 610100
        Attorney for Plaintiff

191 Peachtree Street, NE
Suite 3980
Atlanta, Georgia 30303
Telephone: (404) 841-9400
Facsimile: (478) 202-7453
d.robinson@ewrlawfirm.com

### <u>CERTIFICATE OF TYPE SIZE COMPLIANCE</u>

Pursuant to Local Rule 5.1C, N.D. Ga. and Standing Order No. 04-01, the

foregoing pleading is prepared in Times New Roman, 14 point.


<u>/s/Douglas M. Robinson</u>
Douglas M. Robinson
Attorney for Plaintiff